# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3913 | **DATE** | 8/7/2001 |
| **CASE TITLE** | Jane Doe vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Revised Memorandum Opinion and Order. Petitioner's motion to intervene and motions to obtain access to certain documents are granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | 8/8/01 | | |
| | Notified counsel by telephone. | | date docketed | | 78 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| RO | courtroom deputy's initials | | 01 AUG -7 PM 4: 31 | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED
AUG 0 8 2001

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 97 C 3913 |
| v. | ) |
| | ) Judge Ruben Castillo |
| | ) |
| CHICAGO POLICE OFFICER, | ) |
| E. MARSALIS, Star # 18736, | ) |
| and the CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## REVISED MEMORANDUM OPINION AND ORDER

Will police misconduct ever end? The answer to this question is "probably not," because any human behavior is difficult to control. Yet, as noted in this opinion, unless serious efforts are undertaken to review, evaluate and scrutinize prior police misconduct, the answer to this question will invariably be "absolutely not."

This settled lawsuit involved important issues concerning the public interest. Plaintiff alleged that she was the victim of a sexual crime committed by a person using his then-existing powers as a Chicago Police Officer, Defendant Marsalis. Plaintiff also alleged that Defendant City of Chicago's Police Department maintained a policy and custom of failing to properly train, hire, supervise, discipline and monitor police officers engaged in repeated acts of misconduct. This lawsuit, like many others, was settled with public funds which were generated by the average City of Chicago taxpayer.

Chicago Reader, Incorporated, a publisher of a weekly newspaper of general city-wide circulation, and Tori Marlan, a staff writer for the *Chicago Reader*, (hereinafter "Petitioners"),

seek to intervene and obtain access to various confidential documents produced in this settled lawsuit pursuant to a protective order entered by this Court on March 26, 1998. For the reasons set forth below, Petitioners' petition to intervene, (R. 65-1), and their motions to obtain access to certain documents produced by Defendant City of Chicago during discovery, (R. 67-1 and 70-1), are hereby granted.

## BACKGROUND

### I. The March 26, 1998 Protective Order

The protective order entered by this Court on March 26, 1998 allowed the parties to designate appropriate discovery material as "confidential." Paragraphs thirteen and fourteen explicitly noted that this Court would retain authority to potentially redesignate any confidential material as a public document "upon application to the Court." (R. 17-1, Agreed Protective Order.) Petitioners seek to intervene to make such an application. The protective order explicitly acknowledges within paragraph thirteen that the standard relevant for this determination is that of "good cause" provided by Fed. R. Civ. P. 26(c). (*Id.*)

### II. The Court's In-Camera Review

In order to properly evaluate the Petitioners' petition and motions, this Court required Defendant City of Chicago to transmit all designated confidential documents for an in-camera review. The Court was surprised to learn that numerous documents (well over five banker's boxes) had been designated as confidential. We have finally concluded our exhaustive, document-by-document in-camera review of these documents.

Many of the so-called "confidential" documents consisted of sealed depositions of Chicago Police Personnel. These documents do not contain information which the Court

considers confidential. Moreover, all personal information has been deleted (social security numbers, addresses and telephone numbers have been redacted) from most of the confidential files reviewed by the Court. Most of the other files are composed of hiring and personnel information for Defendant Marsalis and investigative complaint register files for Defendant Marsalis and other police officers, which primarily concern allegations of official sexual misconduct. All of the documents reviewed by the Court are described in a February 14, 2001 letter to the Court by Defendants' counsel, which is now part of the official record.

## ANALYSIS

Petitioners argue that they have a right to intervene and obtain access to various documents produced in this settled lawsuit based on Federal Rules of Civil Procedure 5(d), 24(b) and 26(c). Petitioners maintain that their petition to intervene is timely, that it cannot disrupt the merits of the case or prejudice the parties and that the strong public interest in disclosure of the documents enables this court to exercise its broad discretion to permit their intervention in this settled lawsuit. Petitioners also contend that the City of Chicago cannot show "good cause" for a protective order and that the First Amendment and the common law entitle Petitioners to access to the documents. Because we find that the release of these documents is vital to the public interest and that any harm to the City of Chicago by the release of the documents is far outweighed by the importance of disclosure to the citizens of Chicago, we grant Petitioners' petition to intervene and their motions to obtain access.

## I. Legal Standards

### A. Petition to Intervene

The Seventh Circuit has held that intervention is "the procedurally appropriate course for

3

third-party challenges to protective orders." *Griffith v. Univ. Hosp., L.L.C.*, 249 F.3d 658, 661 (7th Cir. 2001) (quoting *Grove Fresh Distrib. Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994)). Petitioners argue that, pursuant to Federal Rule of Civil Procedure 24(b),[1] their petition for intervention should be granted because the Seventh Circuit has upheld the media and the public's right to enter into lawsuits to which they are not a party in order to challenge a seal on documents impairing their access to judicial records or proceedings, or restricting their ability to report on them. *See, e.g., Jessup v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000) (applying Rule 24(b) to newspaper's motion to intervene in settlement agreement that included a confidentiality provision and concluding that permissive intervention is "sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders"); *In re Associated Press*, 162 F.3d 503, 508 (7th Cir. 1998) (reversing the district court and finding that "the Press ought to have been able to intervene in order to present arguments against limitations on the constitutional or common law right of access"). *See also In re Knight Publ'g Co.*, 743 F.2d 231, 234 (4th Cir. 1984) (holding that "[t]o facilitate a trial court's case-by-case determination of closure, 'representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion'" from the proceedings or access to documents) (quoting *Globe*

---

[1] Rule 24(b) provides, in relevant part, that:

> "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Fed. R. Civ. P. 24(b).

*Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982)).

Indeed, similar to the case at bar, this Court has previously granted a non-party's petition to intervene even after a judicially approved settlement for the purpose of obtaining access to documents, on the basis that a petition to intervene is a separate litigation that does not require a pending case or an independent jurisdictional basis. *Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D. Ill. 1997) (granting Chicago Reader, Inc.'s petition to intervene – filed after civil rights case settled and dismissed – to obtain access to certain documents produced by the City of Chicago). *See also Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) (stating that "the courts and commentators seem unanimous in finding such an inherent power [of the district court] to modify discovery-related protective orders, even after judgment, when circumstances justify).

Furthermore, Petitioners maintain that their petition to intervene is timely and cannot disrupt the merits of the case or prejudice the parties.[2] Rule 24(b) vests this Court with "considerable discretion" when deciding whether to permit third-party intervention. *See Griffith*, 249 F.3d at 661-62 (citation omitted). The Seventh Circuit requires us to apply the following test when faced with a motion to intervene to modify a protective order: "(1) whether the party opposing intervention has any substantial right at stake, and (2) whether the proposed

---

[2] Initially, given that questions of timeliness are within this Court's discretion, *United States v. Kemper Money Mkt. Fund, Inc.*, 704 F.2d 389, 391 (7th Cir. 1983), we find that, because: (1) Petitioners waited only nine months after settlement in this case before filing their petition to intervene; (2) they seek intervention only to pursue an ancillary claim for access to documents; (3) the prejudice to Petitioners if intervention is denied far outweighs the prejudice to the original parties if intervention is permitted, *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985); and (4) the public's need to review police misconduct files constitutes "unusual circumstances," *id.*, the petition to intervene is timely.

modification would 'tangibly prejudice' that right." *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1981). Applying the *Wilk* test, this Court easily concludes that little prejudice can occur to either named party by this intervention as Petitioners do not seek any of Plaintiff's documents, and this opinion makes clear that any personal information which remains in the documents produced by Defendants will be redacted before said documents are turned over to Petitioners. Moreover, as Petitioners seek to litigate only a completely ancillary issue from the underlying merits of this settled lawsuit, we find that there can be no "tangible prejudice" to the parties.

Finally, Defendants' argument that they are prejudiced by having relied on this Court's March 26, 1998 protective order does not sufficiently outweigh the strong public interest in disclosure of the documents produced by Defendants which would be lost if intervention is not allowed. *See, e.g., Public Citizen*, 858 F.2d at 787 (granting Public Citizen's motion to intervene and finding it to be timely because "there is a strong public interest in the documents at issue, which concern an important public health issue"). Therefore, we grant Petitioners' petition to intervene and proceed to our analysis of their motions to obtain access to the "so-called" confidential documents produced by the City of Chicago in this settled lawsuit.

### B. Motion to Obtain Access

Petitioners base their access claim first on Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure. Rule 5(d) requires that all discovery materials must be filed with the district court, unless the court orders otherwise. Fed. R. Civ. P. 5(d).[3] Rule 26(c) provides, in pertinent

---

[3] The Advisory Committee notes accompanying Federal Rule of Civil Procedure 5(d) reveal substantive policy considerations underlying the Rule. *See In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 146 (2d Cir. 1987) (explaining that the notes "make clear that Rule

6

part, that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden. . . ." Fed. R. Civ. P. 26(c). These Rules and "[m]ost cases endorse a presumption of public access to discovery materials," *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999), and a plain reading of Rule 26(c) demonstrates that, if good cause is not shown for maintaining a protective order, "the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection." *In re "Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987) (holding that the burden to show good cause for a protective order is upon the party seeking the order). Moreover, this Court has discretion to decide when a protective order is no longer appropriate, and we retain the authority to potentially redesignate any confidential material as a public document. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

Second, Petitioners contend that the First Amendment, case law and public policy dictate that "pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceeding." *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978). *See also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564 (1980) (finding that "the public has a First Amendment, freedom of speech, press, and assembly-based right to access to judicial proceedings"); *Matter of Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (holding that "[t]rials and pre-trial hearings are open to the public under the First Amendment,

---

5(d), far from being a housekeeping rule, embodies the Committee's concern that class action litigants and the general public be afforded access to discovery materials whenever possible").

7

unless some extraordinary circumstance requires their closure") (citations omitted). The Seventh

Circuit has explained that, because the "public at large pays for the courts," they have an "interest

in what goes on at all stages of a judicial proceeding." *Citizens First*, 178 F.3d at 945 (stating

that the public's interest "does not always trump the property and privacy interests of the

litigants, but it can be overridden only if the latter interests predominate in the particular case,

that is only if there is good cause for sealing a part or the whole of the record in that case").

Indeed, this Court has determined that, in deciding whether there is good cause for a

protective order, we must balance the interests involved: "the harm to the party seeking the

protective order and the importance of disclosure to the public." *Wiggins*, 173 F.R.D. at 229.

Furthermore, we have stated that "[s]ome factors to consider in making this determination are

privacy interests [and] whether the information is important to public health and safety." *Id.*

(adding that "the court must consider the facts and circumstances of each case in making the

good cause determination"). Mindful of the belief that "[p]eople in an open society do not

demand infallibility from their institutions, but it is difficult for them to accept what they are

prohibited from observing," *Richmond Newspapers*, 448 U.S. at 572, we now explain why the

public's need to review the police misconduct files in this settled lawsuit far outweighs the City

of Chicago's privacy interests in the so-called "confidential" documents.

## II. The Public's Need to Review Police Misconduct Files

Simply put, the average Chicago citizen is tired of being the victim – either direct or

indirect – of repeated police misconduct. Police misconduct creates one of the ultimate

"lose/lose" situations in our democratic society. Police misconduct has multiple layers of

victims. First, the real victim of police misconduct is the person who fully trusts the police motto

8

"We Serve and Protect" only to be deceived and brutalized by a supposed law enforcement officer. No price can be placed on this paradoxical betrayal. Second, the additional victims of police misconduct are those courageous and righteous law enforcement officers who every day risk their lives to protect their community only to suffer from the "bad cop" label caused by the misdeeds of a rogue fellow officer. Third, law enforcement efforts suffer because the public loses important trust in the street guardians of our legal system. Fourth, there are instances where real criminals avoid responsibility for their actions because cases or evidence is lost as a result of police misconduct. Fifth, the community at large suffers from the public perception that local law enforcement cannot be relied upon. Ironically, the average citizen not only suffers these unquantifiable losses, but also is asked to foot the bill when local communities are forced to pay for the misdeeds of its law enforcement officers. In fact, the City of Chicago, a defendant in this case, just recently agreed to pay $18 million in the settlement of an egregious police misconduct case. *See* Op-Ed Article, *Right Answer, Wrong Question – $18 million settlement of Haggerty lawsuit ends ordeal, but will it help police–community relations?*, Chi. Sun Times, June 29, 2001. This recent settlement is a good example of the bad cop syndrome that the City taxpayer underwrites, which follows a familiar formula: police misconduct = seriously aggrieved or sometimes dead victim = lawsuit = settlement paid by taxpayer = no real changes or evaluations to prevent further misconduct. This ugly and expensive syndrome must come to an end.[4]

The only way to end this syndrome is to evaluate and reevaluate past practices.

---

[4] This syndrome is not unique to our dear City. For example, the City of New York recently agreed to pay police misconduct victim Abner Louima $8.75 million. More importantly, that City promised to implement some departmental reforms. Perhaps similar reforms should be evaluated and voluntarily implemented in the City of Chicago.

Unfortunately, the City cannot accomplish this on its own. Some of these issues require public debate and appropriate media scrutiny.

An excellent example of the precise type of problem involved in this case, and how media scrutiny helps focus attention on it, is contained in a recent article in *Newsweek* entitled, "Betrayed By a Badge." Peg Tyre, *Betrayed By a Badge*, Newsweek, June 18, 2001, at 38-41. The article's headline declares: "More cases of sexual assault by police are coming to light." *Id.* at 38. Clearly, if Defendants' confidentiality position were adopted by this Court, these types of articles could never be written and public debate would suffer. In hopes of further stimulating public debate and media scrutiny of the City of Chicago's past practices, this Court hereby grants Petitioners' petition to intervene and their motions to obtain access to the confidential documents produced by Defendant in this settled lawsuit.

The *Chicago Reader* and Tori Marlan are to be commended for their thorough investigative reporting and ongoing pursuit of truth in these types of police misconduct cases. *See, e.g., The Chicago Reader v. Sheahan*, 141 F. Supp. 2d 1142 (N.D. Ill. 2001); *Chicago Reader, Inc. v. Sheahan*, 192 F.R.D. 586 (N.D. Ill. 2000). As Justice Brandeis so aptly observed in 1914, "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." L. Brandeis, *Other People's Money and How the Bankers Use It* 89 (1914) (Reprinted by Bedford Books *of* St. Martin's Press 1995). This important truth, *i.e.* the necessity of exposing societal ills to the scrutiny of public attention, has endured throughout the years. This Court, in an earlier opinion also dealing with the disclosure of discovery documents produced by the City of Chicago, quoted Martin Luther King, Jr.'s famous letter

10

from the Birmingham County Jail in April 1963:

> Like a boil that can never be cured as long as it is covered up but
> must be opened with all its pus-flowing ugliness to the natural
> medicines of air and light, injustice must likewise be exposed,
> with all of the tension its exposing creates, to the light of human
> conscience and the air of national opinion before it can be cured.

*Wiggins*, 173 F.R.D at 230.  In *Wiggins*, as well, we concluded "that the allegations of police

misconduct contained in the disputed files must be exposed to the light of human conscience

and the air of natural opinion."  *Id.*  This same principle certainly holds true today.

# CONCLUSION

Court related documents are presumed to be matters within the public domain, especially when they concern matters of general concern to the workings of our democratic society. Police misconduct certainly meets this standard. Every citizen will benefit from an end to the ugly and expensive syndrome caused by police misconduct. For these reasons, as detailed herein, Petitioners' petition to intervene, (R. 65-1), and their motions to obtain access to certain documents produced by Defendant City of Chicago during discovery are granted. (R. 67-1 and 70-1.) These documents should be produced to Petitioners on or before August 30, 2001. To the extent that the documents still bear private and personal information, such as social security numbers, home addresses and telephone numbers, said documents should be further redacted before they are turned over to Petitioners. All criminal history information will retain its confidential designation. Additionally, the psychological examination of Plaintiff in this case will retain its confidential designation and any other medical or psychological records for other individuals, such as Defendant Marsalis, will be retained as confidential.

**ENTERED:**

**Judge Ruben Castillo**
**United States District Court**

Dated: August 7, 2001